Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7725 | **DATE** | 3/14/2002 |
| **CASE TITLE** | ENTERPRISE WAREHOUSING SOLUTIONS vs. CAPITAL ONE SERVICES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendants' motion to dismiss is denied. Defendants' answer to be filed on or before April 11, 2002.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | |
|---|---|
| No notices required, advised in open court. | |
| No notices required. | number of notices |
| Notices mailed by judge's staff. | MAR 1 5 2002 date docketed |
| Notified counsel by telephone. | |
| ✓ Docketing to mail notices. | docketing deputy initials |
| Mail AO 450 form. | |
| Copy to judge/magistrate judge. | MAR 1 5 2002 date mailed notice |
| LG courtroom deputy's initials | mailing deputy initials |

Date/time received in central Clerk's Office

Document Number 27

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ENTERPRISE WAREHOUSING SOLUTIONS, INC., an Illinois corporation, <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL ONE SERVICES, INC., a Delaware corporation; AND AB INITIO SOFTWARE CORPORATION, a Massachusetts corporation, <br><br> Defendants. | No. 01C 7725 <br><br> Judge John W. Darrah |

DOCKETED
MAR 1 5 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff/Counter-Defendant, Enterprise Warehousing Solutions, Inc. ("EWS"), filed suit against the Defendants/Counter-Plaintiffs, Capital One Services, Inc. ("Cap One"), and Ab Initio Software Corporation ("Ab Initio"), alleging a breach of contract claim against Cap One and a claim for tortuous contractual interference against Ab Initio. Cap One filed a four-count counterclaim against EWS. Count I alleges a breach of contract claim. Count II alleges a claim for an equitable accounting. Count III alleges a claim for unjust enrichment, pled in the alternative to Count I; and Count IV alleges a claim for fraud in the inducement against EWS and Counter-Defendant, David Marco ("Marco"). Currently before the Court is Defendants' Motion to Dismiss Counts I, II, III and IV of Cap One's Amended Counterclaim pursuant to Federal Rule of Civil Procedure 12 (b)(6).

A motion to dismiss should be granted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When considering the motion, the Court accepts all well pled factual



allegations in the complaint as true and draws all reasonable inferences from the facts in the light most favorable to the plaintiff. *Arazie v. Mullane,* 2 F.3d 1456, 1465 (7th Cir. 1993). The plaintiff need not state all the facts necessary to establish the claim; and the "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.,* 58 F.3d 295, 297 (7th Cir. 1995).

A reading of the Amended Counterclaim supports the following allegations of events and conduct of the parties.

Prior to 1999, Cap One had developed a data base of business information known as a Meta Data Repository ("MDR"). Around December 1999, and again around August of 2000, Cap One purchased certain Ab Initio software programs characterized as an "Extraction, Transformation and Loading" tool ("ETL tool") and an ETL add-on to move and track data.

In 2000, Cap One discussed solutions to integrate the Ab Initio software program into its MDR system with several potential vendors. In November of 2000, Tammy Hsieh ("Hsieh") and Shaun Hunter ("Hunter"), employees of Cap One's Information Technology ("IT") Department, attended a seminar to investigate possible approaches to the integration project. One of the speakers at the seminar was Marco, representing EWS. At the seminar, Marco stated that he was a leading expert on MDRs, that he was involved in all major MDR projects in the nation, that he had published a book on MDRs, and that he had a 100% customer satisfaction rate. Hsieh and Hunter spoke with Marco about their project and indicated they would like to complete the Feasibility Phase before the end of 2000, which consisted of the development of a solution for the project but not the design or implementation of the solution.

2

Marco told Hsieh and Hunter that he had extensive experience with such integration projects and could personally provide consultation services to Cap One for the Feasibility Phase in December 2000. Marco then indicated that he needed "something in writing" before he would begin consulting for Cap One. On or about November 12, 2000, Marco, through EWS, sent a document which he characterized as a proposal to Cap One, making representations to Cap One about his and EWS's abilities, success rates, qualifications and also stating that Marco would be Cap One's "single point of contact." EWS also sent to Cap One a Statement of Work agreement stating that Cap One would receive consultation services in exchange for a maximum fee of $365,000.

Hsieh refused to enter into the Statement of Work agreement due to the fact that it did not describe any specific services EWS would provide in exchange for the $365,000 fee but, rather, stated only vague descriptions of the consulting services. Hsieh also stated that she was not authorized to enter into the agreement on Cap One's behalf.

Marco then requested that Hsieh sign a basic letter of intent and stated that he, the industry expert, and another EWS employee, the Project Manager, would provide on-site consultation. Hsieh executed the letter of intent with the understanding that EWS would provide Cap One with specific, technical suggestions for the Feasibility Phase of the integration project. The complaint alleges that the letter provided that Cap One would pay EWS $5,000.00 per day for an Industry Expert for up to fifteen days, plus travel expenses, and $2,250.00 per day for a Project Manager for up to twenty-five days, plus travel expenses.

On December 4, 2000, Marco and another consultant, Attila Finta ("Finta"), arrived to begin consultation services at the offices of Cap One. Marco then left the Cap One offices on December 6, 2000. During the time Cap One was negotiating with and consulting EWS, Cap One continued

3

to explore other options for its integration project through other vendors. On December 13, 2000, Hsieh met with Andrew Schon ("Schon"), a representative from Ab Initio. Schon presented to Hsieh Ab Initio's architectural design, functionality, process and project methodology for the integration project.

On December 14, Marco returned to the Cap One offices and gave a one-hour, generalized presentation on MDRs to some Cap One employees. No specific, technical information or methodology was presented. At some time after the December 14, 2000 presentation, Marco met with Schon. After this meeting, at about 5:00 p.m. on December 14th, Marco presented Hseih with the same architectural design, functionality, process and project methodology for the integration project that Schon had presented to Hsieh on December 13th. Between December 9, 2000 and December 23, 2000, EWS invoiced Cap One for seven-and-a-half days of Marco's time and twelve days of Finta's time, plus expenses. Cap One paid these invoices, totaling $73,472.79, although it claimed that it received nothing of value for this money.

Cap One now alleges: (1) that EWS's failure to provide Cap One with specific, technically detailed suggestions regarding the integration project was a breach of contract; that allowing EWS to keep the $73,472.79 would unjustly enrich EWS; (2) that Cap One is entitled to an equitable accounting to determine whether EWS was overpaid for the hours of service actually received by Cap one; and (3) that Marco's and EWS's representations about their experience, qualifications, and ability to work on Cap One's integration project were fraudulent.

**Count I. Breach of Contract**

Essential to the analysis of Defendants' Motion to Dismiss Cap One's breach of contract claim is the standard for considering a motion to dismiss. The plaintiff is entitled to the benefit of

4

the court's imagination and ability to hypothesize a set of facts that would entitle the plaintiff to relief consistent with the claims set out in the complaint. *Sanjuan v. American Bd. Of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). The question for the Court is whether it is possible that EWS might have breached its contract with Cap One despite the fact that it submitted a complete plan for the integration project.

Cap One argues that if the Court is to accept EWS's theory, the logical inference would be that if Cap One hired ten different consultants to provide suggestions for the integration project and only one consultant actually did the work to come up with a solution while the other nine simply photocopied his work and submitted it as their own, that all would have fulfilled their contractual obligations to Cap One. Cap One argues that it can prove that this was not the intention of the contract and that EWS's obligations entailed more than merely copying the work of another company and that the money agreed to be paid by Cap One was for Marco's specific expertise.

EWS claims that Cap One must allege its own performance under the contract in order to plead a valid breach of contract claim. However, established contract law in Illinois permits a party to forego performing its obligations under a contract if the other party commits a material breach of the contract. *Sahadi v. Continental Illinois Nat'l Bank and Trust Company of Chicago*, 706 F.2d 193, 197 (7th Cir. 1983). The determination of what constitutes a material breach is a question of fact which involves a fairly detailed inquiry, which should be left for the trial. *Sahadi*, 706 F.2d at 197 (decision on materiality unsuited for resolution by summary judgment).

By stating in its counterclaim that EWS provided it with a plan for the integrated project, Cap One did not necessarily concede that EWS fulfilled its contractual obligations. Therefore, Cap One does not have to plead its own performance of the contractual obligations because the alleged facts

5

set up a possible scenario where such performance would not have been required (*i.e.*, in the case of a material breach by EWS). Determination of the extent of each party's obligations, along with what constitutes a material breach of those obligations, is a question of fact for the trial. For present purposes, Count I of Cap One's counterclaim satisfies the liberal requirements of notice pleading set out in the Federal Rule of Civil Procedure 8, which does not require great factual detail but only fair notice of the plaintiff's claims and the grounds on which the claims rest. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). Accepting the claims in the complaint as true, it appears that Cap One could prove a factual scenario, consistent with the pled facts, that would entitle it to relief under a breach of contract claim. This is all that need be established for a complaint or counterclaim to survive a Rule 12(b)(6) motion.

**Count II. Accounting**

Count II of the Amended Counterclaim prays for an accounting against EWS. Due to the fact that Cap One received only weekly summaries of Marco's and Finta's work, Cap One alleges that it has no means to determine whether EWS's agents actually worked the hours they claimed and, therefore, requires the equitable remedy of an accounting to determine whether it overpaid EWS. Pursuant to this, Cap One has requested that EWS account as to time spent and work done for Cap One, that EWS deliver to Cap One all records related to such time spent and work done, and that EWS refund any overpayments made by Cap One.

In order to state a claim for an equitable accounting, the party bringing the claim must first demonstrate that it has no adequate remedy at law. *Zell v. Jacoby-Bender, Inc.*, 542 F.2d 34, 36 (7th Cir. 1976). The party must also show that either a breach of fiduciary duty, a need for discovery, fraud, or that computing damages involves unraveling mutual accounts so complicated that only a

court in equity can unravel them. *Hartigan v. Candy Club*, 149 Ill. App. 3d 498, 501 (1986); *Zell*, 542 F.2d at 36; *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985). The Court has broad discretion to determine whether the facts of a particular case warrant an equitable accounting. *First Commodity Traders, Inc.*, 766 F.2d at 1011.

To maintain an equitable accounting action on a cause of action cognizable at law, the plaintiff must meet a high standard of showing that the accounts between the parties are so complicated that they necessitate a court in equity to unravel them to determine damages. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). The Supreme Court made it clear that this standard will be met in only rare cases and that a legal remedy will not be deemed inadequate merely because it requires a look into the defendant's business records. *Dairy Queen, Inc.*, 369 U.S. at 478-479.

A breach of contract action is a traditional legal claim; and, although plaintiff cannot recover under an equitable accounting action in conjunction with a breach of contract action, this does not preclude the plaintiff from pleading both. Federal Rule of Civil Procedure 8 (e)(2) allows a party to plead inconsistent, alternative demands for relief. The rule specifically states that claims may be brought, regardless of consistency and whether they are legal or equitable. Therefore, the elements pled in one demand cannot be used against the pleader to defeat another, inconsistent demand.

Also evident from Rule 8 is the liberal pleading requirements of notice pleading. Fed. R. Civ. P. 8. To plead a claim for an equitable accounting, Cap One need only make a short, plain statement of the claim showing that it is entitled to relief. Fed. R. Civ. P. 8. No detailed facts are needed as the issue is not whether Cap One will prevail but, rather, whether or not it should be allowed to present evidence in support of the claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The question, whether the accounts between the parties are complicated to the point where an accounting action is warranted, is a question that involves detailed inquiry into the facts. The accounts between the parties must first be looked into and evidence must be presented to determine whether Cap One has an adequate remedy at law. This sort of investigation and inquiry into the merits of the claim for equitable accounting are inappropriate for consideration on a motion to dismiss. Cap One has alleged facts that, when construed in the light most favorable to Cap One, could entail a situation where Cap One would be entitled to an equitable accounting.

**Count III. Unjust Enrichment**

On much the same basis as it asserts its breach of contract claim, Cap One pleads in the alternative that it provided EWS with payment of services which were not received and, therefore, is entitled to relief under the doctrine of unjust enrichment. EWS responds to this claim by stating that Cap One got exactly what it bargained for; and, therefore, EWS has not been unjustly enriched.

In order to state a claim for relief under the doctrine of unjust enrichment in Illinois, the plaintiff must show that the defendant: (1) received a benefit (2) to the plaintiff's detriment and (3) that the retention of the benefit by the defendant violates fundamental principals of justice, equity and good conscience. *F.H. Prince & Co., Inc., v. Towers Financial Corp.*, 275 Ill. App. 3d 792, 804 (1995). This cause of action is based on implied contract, or quasi-contract, theory. *Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 497 (1992).

In Count III of the Amended Counterclaim, Cap One alleges that, in contrast to EWS's representations, Marco did not consult at the Cap One site. Marco allegedly left Cap One two days after arriving and only returned to give a one-hour presentation about a week later. Cap One further

8

alleges that, although it received nothing of value from EWS, it paid EWS $73,472.79, which EWS has retained.

In its Motion to Dismiss and memorandum in support thereof, EWS claims that Cap One has pled that it got exactly what it bargained for and, having so pled, defeats its own claim for unjust enrichment. An investigation into whether or not Cap One received what it paid for is beyond the scope of what the Court may consider on a motion to dismiss. Cap One's Amended Counterclaim alleges all three required elements of a cause of action for unjust enrichment. In a notice pleading jurisdiction, these allegations are sufficient to give fair notice of the plaintiff's claims and the grounds on which the claims rest. *Leatherman,* 507 U.S. at 168.

**Count IV. Fraudulent Inducement**

In Count IV of the Amended Counterclaim, Cap One brings a claim for fraudulent inducement against EWS and Marco based on representations made by Marco and EWS regarding Marco's qualifications, experience, and knowledge. Cap One also alleges that EWS's claims that it would provide Cap One with specific, technically detailed suggestions and that Marco would personally provide consultation services were made fraudulently to induce Cap One to retain EWS's services.

In order to plead a valid claim for fraudulent inducement under the Federal Rule of Civil Procedure 9(b), the claimant must state facts with particularity to describe the circumstances constituting fraud. As articulated by the Seventh Circuit, "this means the who, what, when, where, and how; the first paragraph of any newspaper story", must be evident in the complaint. *Dileo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990). However, knowledge and intent of a party may be alleged generally. Fed.R.Civ.P. 9 (b). Under Illinois law, a party must plead the following

9

elements to sustain an action for fraudulent inducement: (1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance. *Neptuno Treuhand-und Verwaltungsgesellschaft MBH v. Arbor*, 692 N.E. 2d 812, 816 (Ill. App. Ct. 1998).

Defendants claim in their Motion to Dismiss that Marco's statements of ability, expertise, experience and customer satisfaction are all non-actionable for fraud under Illinois law because they are all commendations and opinions and do not constitute statements of material fact.

In order for a statement to be actionable, it must state a past or present fact; and expressions of opinions, expectations, or future contingent events do not qualify. *Razdan v. General Motors Corp.*, 979 F.Supp. 755, 759 (N.D. Ill. 1997). Under this rule, courts have decided that statements regarding one's abilities are mere "puffery" and are not actionable for fraud, while cases dealing with a statement representing certain abilities of a product to perform a certain function have led to viable fraud actions. *Cold Spring Granite Co., v. Information Management Associates*, 1999 WL 1249337 (N.D. Ill. Dec. 17, 1999); *Walter Raczynski Prod. Design v. International Business Machines Corp.*, 1993 WL 282722 (N.D. Ill. July 21, 1993); *Neptuno Treuhand-und Verwaltungsgesellschaft MBH*, 295 Ill. App. 3d at 571. It is also generally held that promises to perform under contracts cannot be actionable for fraud unless the plaintiff shows "specific, objective manifestations of fraudulent intent -- a scheme or device." *Industrial Specialty Chemicals, Inc. v. Cummins Engine Co., Inc.*, 902 F.Supp. 805, 813 (N.D. Ill. 1995). The plaintiff must allege sufficient facts to show that the defendant never intended to keep its word. *Industrial Specialty Chemicals, Inc.*, 902 F.Supp. at 813.

In the instant case, Marco made statements concerning his ability and also made past fact statements, including that he authored a book on MDRs and that he had a 100% customer satisfaction rate. These latter statements do not constitute mere "puffery" and, at a minimum, constitute an allegation of a false statement of material fact sufficient to withstand dismissal.

For the reasons stated above, Defendants' Motion to Dismiss is denied.

Dated: March 14, 2002

JOHN W. DARRAH
United States District Judge